## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**RYAN CHAPMAN**,

    *Plaintiff,*

    v.

**ADVANCED PORTFOLIO GROUP, LLC, HUNTINGTON DEBT HOLDING, LLC, ALLIANT CAPITAL MANAGEMENT, LLC,** *and* **ORION CAPITAL SOLUTIONS, LLC,**

    *Defendants.*

Case No:    8:22-cv-2616

**JURY TRIAL DEMANDED**

## COMPLAINT & DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Ryan Chapman ("**Mr. Chapman**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, Advanced Portfolio Group, LLC, ("**Advanced**"), Huntington Debt Holding, LLC, *also known as* Huntington Debt Holdings, LLC ("**Huntington**"), Alliant Capital Management, LLC ("**Alliant**"), and Orion Capital Solutions, LLC ("**Orion**"), (collectively, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action brought by Mr. Chapman against Huntington and Orion for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), and against all Defendants for violations of the *Florida Civil Remedies*

*for Criminal Practices Act*, Fla. Stat. § 772.101, *et seq.* ("**CRCPA**"), and the *Florida Consumer Collection Practices Act*, Fla. Stat. § 559.55, *et seq.* ("**FCCPA**").

## JURISDICTION AND VENUE

2.     Subject matter jurisdiction for Plaintiff's federal claims arises under the FDCPA, 15 U.S.C. 1692k(d), and 28 U.S.C. § 1331, as the FDCPA is a federal statute.

3.     This Court has supplemental jurisdiction for Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this cause of action occurred within Florida, including in this District and Division.

## PARTIES

### Mr. Chapman

5.     **Mr. Chapman** is a natural person residing in the City of Tampa, Hillsborough County, Florida.

6.     Mr. Chapman is a "*Consumer*" as defined by the FDCPA and the FCCPA, 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55(8), respectively.

### Advanced

7.     **Advanced** is a New York limited liability company with a principal address of 1965 Sheridan Drive, Suite 300, Buffalo, NY 14223.

8.     Advanced is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 S. Pine Island Rd., Plantation, FL 33324.

9.     Advanced is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("CCA") and holds Florida CCA license number CCA9904370.

## Huntington

10.     **Huntington** is a New York limited liability company with a principal address of 1965 Sheridan Drive, Suite 200, Buffalo, NY 14223.

11.     Huntington is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 S. Pine Island Rd., Plantation, FL 33324.

12.     Huntington is registered with the Florida Office of Financial Regulation as a CCA and holds license number CCA9904192.

## Alliant

13.     **Alliant** is a New York limited liability company with a principal address of 1965 Sheridan Drive, Suite 100, Buffalo, NY 14223.

14.     Alliant is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 S. Pine Island Rd., Plantation, FL 33324.

15.     Alliant is registered with the Florida Office of Financial Regulation as a CCA and holds license number CCA9903253.

## Orion

16.     **Orion** is a New York limited liability company with a principal address of 1971 Abbott Rd., Suite 10, Lackawanna, NY 14218.

17.     Orion's is registered to conduct business in the State of Florida, where its Registered Agent is URS Agents, LLC, 3458 Lakeshore Dr., Tallahassee, FL 32312.

18.     Orion is registered with the Florida Office of Financial Regulation as a CCA and holds license number CCA9904214.

19.     As licensed CCAs, the Defendants know or should know their obligations under the FDCPA and the FCCPA.

20.     The Defendants are *debt collectors* within the meaning of both the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, Fla. Stat. § 559.55(7), in that they use instrumentalities of commerce, including postal mail, telephone, the internet, and/or e-mail, interstate and within the State of Florida, for their businesses, the principal purposes of which are the collection of debts, and/or they regularly collect or attempt to collect, debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

### The Debt

21.      Around December 11, 2019, Mr. Chapman obtained a $2,500 line of credit from CreditFresh (the "**CreditFresh Account**" or "**Account**"). **SEE PLAINTIFF'S EXHIBIT A.**

22.      The *effective* interest rate on the Account was at least **150%** annually. *Id.*

23.      Mr. Chapman made several payments on the Account, up to June 2020, when he was no longer able to keep up with the excessive fees and interests charged monthly.

24.      By June 2020, CreditFresh claimed Mr. Chapman now owed $2,587.06 (the "**Debt**").

25.      Mr. Chapman used the proceeds from the CreditFresh Account to make personal and household purchases.

26.      The Debt thus meets the definitions of *Debt* under the FCCPA, Fla. Stat. § 559.55(6), and the FDCPA, 15 U.S.C. § 1692a(5).

27.      Fla. Stat. § 687.071(3) renders extending credit with annual interest rates **greater than 25%** a criminal offense.

28.      Fla. Stat. § 687.071(7) renders any extension of credit, and any debt stemming from such extension of credit, void and unenforceable.

29.     Any person who willfully makes such extension of credit, in addition to subjecting themselves to criminal sanctions, forfeits the right to collect payment for the extension of credit, as such extensions of credit are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935).

30.     Even the recovery of the principal balance made at usurious rates is impermissible under Florida law. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

31.     Because the CreditFresh Account is subject to an annual interest rate exceeding 25%, the balance is void *ab initio* and unenforceable under Florida law. *See Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966). *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.")

32.     The balance on the CreditFresh Account is therefore an *unlawful debt* per Fla. Stat. § 772.102(2)(a)(3).

### Propel Engages in Rent-a-Bank Scheme with CBW Bank

33.     Formed in 2011, Propel Holdings, Inc. ("**Propel**") is an Ontario, Canada-based "FinTech" business which uses proprietary methods to make

extensions of credit and loans to consumers at interest rates which are illegal in most states, including Florida.

34.     Propel's two main products are CreditFresh and MoneyKey.

35.     According to its Preliminary Prospectus dated September 29, 2021, prepared in advance of its initial public offering of shares of stock on a publicly-traded stock exchange, Propel has invested millions of dollars in developing underwriting analytics.

36.     Propel goes on to explain in its Preliminary Prospectus that it has a $120 million line of credit which it controls, along with two Delaware Statutory Trust entities called CreditFresh DST I and CreditFresh DST II.[1]

37.     Propel explains this credit line provides "Propel with the debt capital to continue to accelerate the growth and expansion of the credit offerings through Propel's platform" (*i.e.*, CreditFresh and MoneyKey). *Preliminary Prospectus*, page 32.

38.     Propel also refers to the $120 million line of credit as the "CreditFresh Facility" and discloses to its investors that the lines of credit are "to be used to fund the Company's CreditFresh brand products." *Preliminary Prospectus*, page 250.

---

[1] Both DSTs are beneficially owned by Propel.

39.     Propel warns its prospective investors that one of its potential weaknesses could be a concentration of credit risk, "because substantially all of its Loans and advances receivable balance is comprised of unsecured small dollar, high interest/financing fee advances and loans to US customers with similar credit characteristics."

40.     Propel takes a decidedly different tone in communications with consumers.

41.     Propel claims its CreditFresh loans are made by CBW Bank and that CreditFresh is simply the servicer of the loans for its "bank partner," CBW Bank.

42.     However, CBW Bank has virtually nothing to do with loans Propel makes utilizing the CreditFresh name – other than to lend its name and status as a state-chartered bank to Propel, a non-bank entity.

43.     Indeed, once the CreditFresh loan was made "by" CBW Bank to Mr. Chapman, the loan was immediately sold by CBW Bank and assigned to Propel.

44.     CBW Bank's sole function in the loan process is to make it *appear* that a bank is the true lender of CreditFresh accounts, even though CBW Bank has virtually nothing to do with marketing, underwriting, or servicing the accounts.

45.     Such deals are frequently referred to as "rent-a-bank" schemes.

46.     As a chartered bank, CBW Bank is not subject to foreign state interest rate limits pursuant to the National Bank Act. *See* 12 U.S.C. § 85.

47.     CBW Bank's home state of Kansas generally considers interest rates over 15% to be usurious; however, Kansas exempts certain types of loans from this restriction, including "open-ended" lines of credit made by a bank.

48.     Thus, by CBW Bank claiming to be the "true lender" of Mr. Chapman's loan, Propel and CBW Bank assert the loans are exempt from Florida's criminal and civil statutes prohibiting usury.

49.     CBW Bank also "partners" with several other FinTechs to make consumer loans.

50.     CBW Bank offers no credit card products or other unsecured consumer loans directly, and its consumer lending business is overwhelmingly generated by its purported partnerships with entities like Propel.

51.     In essence, Propel launders its CreditFresh loans through CBW Bank, claiming that CBW Bank is the true lending entity, despite the fact the loans are funded with a credit line controlled only by Propel and its subsidiaries, underwritten and approved by Propel, collected by Propel, directly or via contractors, and interest in the loan is assigned to Propel almost immediately after origination.

52.     Propel further indemnifies CBW Bank of any potential loss related to the CreditFresh loans.

53.     Thus, for all intents and purposes, no capital belonging to CBW Bank is ever actually at risk in the making of CreditFresh loans or extensions of credit.

54.     Propel, and not CBW Bank, has the predominant economic interest in loans made to consumers like Mr. Chapman.

55.     As the entity with the predominant economic interest in the loan, Propel, and not CBW Bank, was the true lender of Mr. Chapman's CreditFresh Account. *See Fulford v. Marlette Funding, LLC,* No. 17CV30376 and *Fulford v. Avant of Colorado, LLC*, No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018); see also, e.g., *State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011); Easter v. Am. W. Fin., 381 F.3d 948, 957 (9th Cir. 2004); *CFPB v. CashCall, Inc.,* No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *Penn v. Think Fin., Inc.*, No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711 (E.D. N.C. 2002); *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014) (memorandum decision); *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190 (N.D. Cal. 2012); and *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017).

56.     Beyond this, Florida's "usury statutes show clear legislative intent to prevent accomplishment of a usurious scheme by indirection, and the concealment of the needle of usury in a haystack of subterfuge." *Pinchuck vs. Canzoneri*, 920 So. 2d 713, 715-16, (Fla. 4th DCA, 2006).

57.     On information and belief, CBW Bank collects a small, but guaranteed, fee for each loan or extension of credit originated and receives a small amount of the profits from CreditFresh loans as part of the rent-a-bank scheme with Propel.

58.     Consumers who are looking to obtain financing from CreditFresh must apply at www.CreditFresh.com – not through CBW Bank's own website.

59.     Propel reports consumers' accounts to the major *Consumer Credit Reporting Agencies* ("CRAs"), including Trans Union, LLC ("Trans Union"). **SEE PLAINTIFF'S EXHIBIT B.**

60.     Tradeline data shows the address associated with the accounts is 200 Continental Drive, Suite 401, Newark, DE 19713 – an address which belongs to Propel, not CBW Bank. ***Id.***

## Huntington Purchases Illegal Debt; Assigns to Alliant

61.     At some point after June 2020, Propel sold the CreditFresh Account to Huntington, or some other successor-in-interest who then re-sold it to Huntington (the "**Debt**").

62.     Upon information and belief, Huntington obtained Mr. Chapman's contact information, including his address, upon purchase of the Debt.

63.     Huntington then hired Alliant as its agent to collect the Debt from Mr. Chapman, or otherwise placed the Debt for collection with Alliant.

64.    Huntington provided Mr. Chapman's contact information to Alliant.

65.    Huntington and Alliant thus knew that Mr. Chapman was a Florida resident.

66.    Huntington obtained a breakdown of the balance of the Debt upon purchase, which it provided to Alliant.

67.    Huntington and Alliant thus knew, or should have known, that they were collecting an illegal Debt from Mr. Chapman, as the interest rate clearly exceeded any rate which could even be potentially legally enforceable in Florida.

68.    Huntington purchases a significant number of unlawful debts originally acquired from sources like CreditFresh - online lenders who make loans at interest rates sometimes exceeding 500% annually, at a tiny fraction of face value.

69.    Huntington then assigns these debts to a number of different collection agencies, including Alliant, Orion and Advanced, who then attempt to collect the full face-value of such debts.

70.    In an attempt to collect the Debt, Alliant made multiple phone calls, mailed several collection letters, and sent several emails, including one dated November 24, 2020 (the "**Alliant Email**") to Mr. Chapman. **SEE PLAINTIFF'S EXHIBIT C.**

71.     Alliant's phone calls, letters, and emails to Mr. Chapman were "communications" as defined by Fla. Stat. § 559.55(2).

72.     Alliant's phone calls, letters, and emails to Mr. Chapman were in connection with the collection of the Debt.

73.     At all times relevant to this matter, Alliant acted as Huntington's agent, on Huntington's behalf, and under Huntington's direction.

74.     Huntington is liable for its own actions, as well as for the actions of its agent, Alliant.

## Huntington Assigns Debt to Advanced for Collection

75.     At some point after November 2020, but prior to March 2021, Huntington recalled the Debt from Alliant and hired Advanced as its agent to collect the Debt from Mr. Chapman, or otherwise placed the Debt for collection with Advanced.

76.     Huntington provided Advanced with Mr. Chapman's contact information.

77.     Advanced thus knew, or should have known, that Mr. Chapman was a Florida resident.

78.     Huntington likewise provided a breakdown of the Debt to Advanced.

79.     Huntington and Advanced thus knew, or should have known, that they were collecting an illegal Debt from Mr. Chapman, as the interest rate clearly exceeded any rate which could be potentially legally enforceable in Florida.

80.     Advanced made multiple phone calls, sent several emails, and mailed several collection letters, including one dated March 3, 2021 (the "**Advanced Letter**"). **SEE PLAINTIFF'S EXHIBIT D.**

81.     Advanced's phone calls, letters, and emails to Mr. Chapman were "communications" as defined by Fla. Stat. § 559.55(2).

82.     Advanced's phone calls, letters, and emails to Mr. Chapman were in connection with the collection of the Debt.

83.     At all times relevant to this matter, Advanced acted as Huntington's agent, on Huntington's behalf, and under Huntington's direction.

84.     Huntington is liable for its own actions, as well as for the actions of its agent, Advanced.

### Huntington Assigns Debt to Orion for Collection

85.     At some point after March 2021, but before July 2022, Huntington recalled the Debt from Advanced and hired Orion as its agent to collect the Debt from Mr. Chapman, or otherwise placed the Debt for collection with Orion.

86.     Huntington    provided    Orion    with    Mr.    Chapman's    contact information.

87.     Orion thus knew, or should have known, that Mr. Chapman was a Florida resident.

88.     Huntington likewise provided a breakdown of the Debt to Orion.

89.     Huntington and Orion thus knew, or should have known, that they were collecting an illegal Debt from Mr. Chapman, as the interest rate clearly exceeded any rate which could be potentially legally enforceable in Florida.

90.     In an attempt to collect the Debt, Orion made multiple phone calls, mailed several collection letters, and sent several emails, including one dated July 21, 2022 (the "**First Orion Email**"). **SEE PLAINTIFF'S EXHIBIT E.**

91.     Orion stated in its Orion Email that, "We are trying to collect on a debt that you owe to Huntington Debt Holdings, LLC." ***Id.***

92.     On September 15, 2022 Orion sent a second email (the "**Second Orion Email**"). **SEE PLAINTIFF'S EXHIBIT F.**

93.     The Second Orion Email offered to settle the $2,587.06 Debt for $1,293.53. ***Id.***

94.     Shortly after Mr. Chapman received the Second Orion Email, Mr. Chapman contacted the undersigned legal counsel, as he believed legal action against him may be imminent.

95.     Orion's phone calls, letters, and emails to Mr. Chapman were "communications" as defined by 15 U.S.C. § 1692a(2) and Fla. Stat. § 559.55(2).

96.    Orion's phone calls, letters, and emails to Mr. Chapman were in connection with the collection of the Debt.

97.    At all times relevant to this matter, Orion acted as Huntington's agent, on Huntington's behalf, and under Huntington's direction.

98.    Huntington is liable for its own actions, as well as for the actions of its agent, Orion.

99.    As a result of the Defendants' efforts to collect an illegal loan, Mr. Chapman has suffered severe emotional distress and spent significant time and energy trying to chart a path to respond to the Defendants' collection, including finding and engaging attorneys.

100.    Mr. Chapman has hired the aforementioned law firm to represent him in this matter and is obligated to pay its reasonable fees.

### COUNT I
### <u>VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692e</u>
### <u>Huntington & Orion</u>

101.    Mr. Chapman adopts and incorporates paragraphs 1 – 100 as if fully stated herein.

102.    Mr. Chapman's CreditFresh Account charged interest at more than double the rate which Florida deems criminal usury and is thus unenforceable.

103.    Huntington & Orion violated § 1692e of the FDCPA, when Orion, as an agent for Huntington, used false and deceptive representations in connection

with the collection of a debt, indicating to Mr. Chapman that he owed the Debt, when he did not, and deceptively labeling the Debt as though it was legal, valid, and enforceable, when it was not.

104.   Accordingly, Huntington & Orion are liable to Mr. Chapman for his actual damages, statutory damages, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

**WHEREFORE,** Mr. Chapman respectfully requests that this Honorable Court enter judgment against Huntington and Orion, jointly and severally, for:

a.   Statutory damages of **$1,000.00** *per defendant*, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.   Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.   Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692f(1)
## Huntington & Orion

105.   Mr. Chapman adopts and incorporates paragraphs 1 – 100 as if fully stated herein.

106.   Mr. Chapman's CreditFresh Account charged interest at more than double the rate which Florida deems criminal usury and is thus unenforceable.

107.   Huntington and Orion violated 15 U.S.C. § 1692f(1) when Orion, acting as Huntington's agent, attempted to collect the Debt, when such Debt was not permitted by law due to the application of interest rates well in excess of Florida law. Accordingly, Huntington & Orion are liable to Mr. Chapman for his actual damages, statutory damages, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

**WHEREFORE,** Mr. Chapman respectfully requests that this Honorable Court enter judgment against Huntington and Orion, jointly and severally, for:

a.     Statutory damages of **$1,000.00** *per defendant*, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.     Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.     Such other relief that this Court deems just and proper.

<u>**COUNT III**</u>
<u>**VIOLATIONS OF THE FCCPA - FLA. STAT. § 559.72(9)**</u>
<u>**All Defendants**</u>

108.   Mr. Chapman adopts and incorporates paragraphs 1 – 100 as if fully stated herein.

109.   The Defendants violated **Fla. Stat. § 559.72(9)** when they attempted to collect the Debt, therein asserting the legal right to do so, when the Debt was illegal

and unenforceable debt due to its unlawful interest rate, in violation of Fla. Stat. § 687.071, and no legal right to collect the Debt existed in Florida.

110.   The Defendants' conduct was willful and intentional, as the Defendants knew, or should have known, that the Debt was unenforceable, based on the breakdown of the Debt, Mr. Chapman's contact information, and prior lawsuits against each Defendant for similar conduct.

111.   Accordingly, the Defendants are liable to Mr. Chapman for his actual damages, statutory damages, costs, and attorney's fees pursuant to Fla. Stat. § 559.77.

**WHEREFORE,** Mr. Chapman respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, for:

a.   Statutory damages of **$1,000.00 *per defendant*** pursuant to Fla. Stat. § 559.77(2);

b.   Actual damages pursuant to Fla. Stat. § 559.77(2);

c.   Injunctive relief preventing the Defendants from attempting to collect the alleged debt from Mr. Chapman pursuant to Fla. Stat. § 559.77(2);

d.   Reasonable costs and attorney's fees pursuant to Fla. Stat. § 559.77(2); and,

e.   Such other relief that this Court deems just and proper.

## COUNT IV
## VIOLATIONS OF THE CRCPA - FLA. STAT. § 772.103(4)
## Huntington & Orion

112.    Mr. Chapman adopts and incorporates paragraphs 1 – 100 as if fully stated herein.

113.    Mr. Chapman's CreditFresh Account charged interest in excess of 25% and is thus an "unlawful debt" under the CRCPA, Fla. Stat. § 772.102(2)(a)(3).

114.    Huntington regularly assigns accounts purchased from CreditFresh to Orion for collection.

115.    The two entities are thus "associated in fact" and amount to an "enterprise" under Fla. Stat. § 772.102(3).

116.    Huntington & Orion violated Fla. Stat. § 772.103(4) by conspiring with each other to collect unlawful debts issued by CreditFresh.

117.    Huntington & Orion both took actions in furtherance of this conspiracy, including purchasing the Debt from CreditFresh, assigning it for collection, authorizing and reviewing collection attempts, and attempting collection from Mr. Chapman.

118.    Huntington & Orion likewise were both aware of the overall objective of the conspiracy, which was to collect unlawful debts issued by CreditFresh.

119.    Accordingly, Huntington & Orion are liable to Mr. Chapman for treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

**WHEREFORE,** Mr. Chapman respectfully requests this Honorable Court enter judgment against Huntington & Orion, jointly and severally, for:

a.  Threefold the amount of actual damages or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Fla. Stat. § 772.104(1);

b.  Reasonable costs and attorneys' fees pursuant to Fla. Stat. § 772.104(1); and,

c.  Any other relief this Court deems equitable and proper under the circumstances.

### COUNT V
### VIOLATIONS OF THE CRCPA - FLA. STAT. § 772.103(4)
### Huntington & Alliant

120.    Mr. Chapman adopts and incorporates paragraphs 1 – 100 as if fully stated herein.

121.    Mr. Chapman's CreditFresh Account charged interest in excess of 25% and is thus an "unlawful debt" under the CRCPA, Fla. Stat. § 772.102(2)(a)(3).

122.    Huntington regularly assigns accounts purchased from CreditFresh to Alliant for collection.

123.    The two entities are thus "associated in fact" and amount to an "enterprise" under Fla. Stat. § 772.102(3).

124.   Huntington & Alliant violated Fla. Stat. § 772.103(4) by conspiring with each other to collect unlawful debts issued by CreditFresh.

125.   Huntington & Alliant both took actions in furtherance of this conspiracy, including purchasing the Debt from CreditFresh, assigning it for collection, authorizing and reviewing collection attempts, and attempting collection from Mr. Chapman.

126.   Huntington & Alliant likewise were both aware of the overall objective of the conspiracy, which was to collect unlawful debts issued by CreditFresh.

127.   Accordingly, Huntington & Alliant are liable to Mr. Chapman for treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

**WHEREFORE,** Mr. Chapman respectfully requests this Honorable Court enter judgment against Huntington & Alliant, jointly and severally, for:

a.   Threefold the amount of actual damages or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Fla. Stat. § 772.104(1);

b.   Reasonable costs and attorneys' fees pursuant to Fla. Stat. § 772.104(1); and,

c.   Any other relief this Court deems equitable and proper under the circumstances.

## COUNT VI
## VIOLATIONS OF THE CRCPA - FLA. STAT. § 772.103(4)
## Huntington & Advanced

128.    Mr. Chapman adopts and incorporates paragraphs 1 – 100 as if fully stated herein.

129.    Mr. Chapman's CreditFresh Account charged interest in excess of 25% and is thus an "unlawful debt" under the CRCPA, Fla. Stat. § 772.102(2)(a)(3).

130.    Huntington regularly assigns accounts purchased from CreditFresh to Advanced for collection.

131.    The two entities are thus "associated in fact" and amount to an "enterprise" under Fla. Stat. § 772.102(3).

132.    Huntington & Advanced violated Fla. Stat. § 772.103(4) by conspiring with each other to collect unlawful debts issued by CreditFresh.

133.    Huntington & Advanced both took actions in furtherance of this conspiracy, including purchasing the Debt from CreditFresh, assigning it for collection, authorizing and reviewing collection attempts, and attempting collection from Mr. Chapman.

134.    Huntington & Advanced likewise were both aware of the overall objective of the conspiracy, which was to collect unlawful debts issued by CreditFresh.

135.    Accordingly, Huntington & Advanced are liable to Mr. Chapman for treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

**WHEREFORE,** Mr. Chapman respectfully requests this Honorable Court enter judgment against Huntington & Advanced, jointly and severally, for:

a.    Threefold the amount of actual damages or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Fla. Stat. § 772.104(1);

b.    Reasonable costs and attorneys' fees pursuant to Fla. Stat. § 772.104(1); and,

c.    Any other relief this Court deems equitable and proper under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Mr. Chapman hereby demands a trial by jury on all issues so triable.

Respectfully submitted on **November 15, 2022**, by:

**SERAPH LEGAL, P. A.**

*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
1614 North 19th Street
Tampa, Florida 33605
Tel: 813-321-2348
Fax: 855-500-0705
BGeiger@SeraphLegal.com
*Counsel for Plaintiff*

## EXHIBIT LIST

A    Mr. Chapman's Truth in Lending Statement and Terms and Conditions, December 11, 2019 - Excerpts

B    Credit Fresh's Tradeline Data Example - Excerpt

C    Alliant's Email to Mr. Chapman, November 24, 2020 - Excerpt

D    Advanced's Letter to Mr. Chapman, March 3, 2021 - Excerpt

E    Orion's First Email to Mr. Chapman, July 21, 2022 - Excerpt

F    Orion's Second Email to Mr. Chapman, September 15, 2022 - Excerpt